UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

OSCAR HARRIS,

    Petitioner,

v.

LINDA METRISH,

    Respondent,
_____/

Civil No. 04-CV-73323-DT
HONORABLE BERNARD A. FRIEDMAN
CHIEF UNITED STATES DISTRICT JUDGE

## OPINION AND ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS

Oscar Harris, ("Petitioner"), presently confined at the Kinross Correctional Facility in Kincheloe, Michigan, seeks the issuance of a writ of habeas corpus pursuant to 28 U.S.C. § 2254. In his *pro se* application, petitioner challenges his conviction and sentence for three counts of first-degree criminal sexual conduct involving sexual penetration occuring during the commission of a felony, M.C.L.A. 750.520b(1)(c); three counts of first-degree criminal sexual conduct involving sexual penetration involving an actor armed with a weapon, M.C.L.A. 750.520b(1)(e); two counts of armed robbery, M.C.L.A. 750.529; two counts of felony-firearm, M.C.L.A. 750.227b; and one count of carjacking, M.C.L.A. 750.529a. For the reasons stated below, the petition for writ of habeas corpus is **DENIED.**

1

## I. Introduction

Petitioner was convicted of the above charges following a jury trial in the Wayne County Circuit Court. Petitioner has provided a detailed statement of facts in his petition for writ of habeas corpus. Respondent has not provided a counter-statement of facts in its answer to the petition. The Court will therefore accept the factual allegations contained within the habeas petition insofar as they are consistent with the record, because the respondent has not disputed them. *See Dickens v. Jones,* 203 F. Supp. 2d 354, 360 (E.D. Mich. 2002)("When a state's return to a habeas corpus petition fails to dispute the factual allegations contained within the habeas petition, it essentially admits these allegations").

Tykeisha Jefferson testified that she was attempting to make a telephone call from a phone booth at a gas station on the morning of July 12, 1999. A man pulled up in a silver Ford Escort, pointed a gun at Jefferson, and ordered her into the car. Jefferson positively identified petitioner as her assailant. Petitioner drove Jefferson to an empty field at the end of the street and demanded her money. Jefferson testified that petitioner then sexually penetrated her against her consent two times.

Petitioner then drove Jefferson to her place of employment. Jefferson asked the receptionist at her building to call the police. Jefferson was taken to the hospital and was examined by a doctor. Although Jefferson had never seen petitioner prior to the incident, she positively identified petitioner as her assailant

in a photo array conducted at police headquarters.

On cross-examination, Jefferson indicated that she had described her assailant as being five foot, seven inches, weighing approximately 200 pounds, and having razor bumps, short, "nappy", uncombed hair with lint balls, and a mustache with a light beard.

Desiree Carroll testified that on July 7, 1999 she was in her mother's 1991 silver Ford Escort with her cousin, Tia Butler. The two women stopped at a party store, where Carroll went inside. When Carroll came out of the store, both the car and Butler were gone. Carroll saw Butler again at her mother's house about an hour later, in a distraught condition. Butler informed them that someone had pulled a gun on her and had taken the car. Carroll testified that her mother's car was discovered four months later with a flat tire, a dent on the side of the car, and the radio missing. The parties stipulated that Irene Carroll was the owner of this silver Ford Escort.

Tia Butler testified that she was riding in a car with her cousin Desiree Carroll on July 7, 1999. After her cousin went into the store, a man with a gun entered the car, placed the gun at her neck, and ordered her to "shut up and drive." Butler positively identified petitioner as being her assailant.

Petitioner ordered Butler to drive to a secluded construction site near the freeway. Petitioner struck Butler with his fist and demanded sex and then sexually penetrated her. Petitioner also removed money from Butler's purse.

Afterwards, petitioner drove Butler to East Grand Boulevard and ordered her out of the car. Butler positively identified petitioner at a photo array conducted at the police department.

On cross-examination, Butler indicated that she had described her assailant as being a thirty year old black man with razor bumps on his face. She also described her assailant as being six foot, four inches tall.

Officer Sheron Jefferson testified that she observed petitioner sitting at a bus stop on West Jefferson Boulevard in Detroit, Michigan on July 16, 1999. Officer Jefferson testified that petitioner matched the description of the individual wanted in these two sexual assaults, and further testified that petitioner had razor bumps on his face. When petitioner was placed under arrest, he told Officer Jefferson that his name was Steven Johnson. After being taken to the police station, petitioner observed the composite drawing of the suspect for these two sexual assaults on a door and said "that's me."

Ms. Carr, a forensic serologist, received forensic samples from Tykeisha Jefferson, Ms. Jefferson's boyfriend, Ande Agee, and petitioner. Ms. Carr testified that a DNA vaginal swab which had been taken from Tykeisha Jefferson indicated that Ms. Jefferson, Mr. Agee, and petitioner each possessed some of the genes that were in the mixture. Ms. Carr indicated that this did not indicate a positive finding, rather, it merely showed that petitioner possessed some of the genes found in the DNA vaginal swab mixture. Carr testified that because

petitioner's genes were found in the mixture, he could not be positively excluded as a contributor to the genetic mixture obtained from Jefferson. Carr indicated, however, that the DNA tests could not positively identify petitioner as being a donor to the genetic mixture.

The Michigan Court of Appeals affirmed petitioner's convictions in part, but vacated three of petitioner's first-degree criminal sexual conduct convictions on double jeopardy grounds. *People v. Harris,* 232191/232192 (Mich.Ct.App. January 7, 2003); *lv. den.* 469 Mich. 874; 668 N.W. 2d 149 (2003). Petitioner now seeks habeas relief on the following grounds:

> I. Ineffective assistance of trial counsel for failing to seek separate trials where the trial involved the attack of two different victims on different days.
>
> II. Prohibition against double jeopardy was violated by imposing multiple sentences for alternate counts of first degree criminal sexual conduct.
>
> III. Ineffective assistance of trial counsel for (a) failing to call witness, (b) failing to obtain DNA expert,(c) failing to adequately cross-examine prosecution's DNA expert, (d) failing to use a statistical analysis in challenging DNA evidence, (e) failing to challenge procedures used in DNA lab, and (f) failing to have crime scene tested for DNA evidence.
>
> IV. Cumulative error requires grant of habeas relief.

## II.  Standard of Review

28 U.S.C. § 2254(d) imposes the following standard of review for habeas cases:
> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits

5

in State court proceedings unless the adjudication of the claim–

> (1)   resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2)   resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

A decision of a state court is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000).  An "unreasonable application" occurs when "a state court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case." *Id.* at 409.  A federal habeas court may not "issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 410-11.

### III. Discussion

**B.  Claims # 1 and # 3.  The ineffective assistance of counsel claims.**

The Court will consolidate petitioner's first and third ineffective assistance of counsel claims for purposes of judicial economy.

To prevail on his ineffective assistance of counsel claims, petitioner must show that the state court's conclusion regarding these claims was contrary to, or

6

an unreasonable application of, *Strickland v. Washington*, 466 U.S. 668 (1984). *See Cathron v. Jones,* 190 F. Supp. 2d 990, 996 (E.D. Mich. 2002). *Strickland* established a two-prong test for claims of ineffective assistance of counsel: the petitioner must show (1) that counsel's performance was deficient, and (2) that the deficient performance prejudiced the defense. *Strickland,* 466 U.S. at 687.

Petitioner first contends that his trial counsel was ineffective for failing to move for separate trials involving the allegations against the two different victims.

The prosecutor in this case successfully moved to have the evidence from each sexual assault introduced in the other sexual assault case has "other acts" evidence pursuant to M.R.E. 404(b). Because the evidence of the the separate sexual assaults could have been admissible as 404(b) evidence in the separate trial of either one, petitioner has failed to show that he was prejudiced by trial counsel's failure to move for severance of the charges. *See United States v. Jackson,* 6 F. 3d 911, 921-22 (2nd Cir. 1993); *See also Krist v. Foltz,* 804 F. 2d 944, 947-48 (6th Cir. 1986)(while joinder of two robbery counts may have been improper, similarity in details of two robberies and their closeness in time would have made evidence of one crime admissible at separate trial of the other; therefore, petitioner suffered no prejudice from his counsel's failure to move for severance).

Petitioner next contends that he was denied the effective assistance of

7

counsel, because trial counsel was appointed to represent petitioner as his fifth court appointed attorney only two months prior to his trial after petitioner's fourth attorney had been permitted to withdraw. The Michigan Court of Appeals rejected this claim, finding that petitioner had failed to establish how he was prejudiced by counsel's alleged lack of preparation in this case. *People v. Harris,* Slip. Op. at * 2.

The Michigan Court of Appeals' decision that petitioner was not denied the effective assistance of counsel on the theory that two months was *per se* insufficient to prepare for his case was a reasonable application of *Strickland*, so that petitioner was not entitled to federal habeas relief, given the relatively uncomplicated nature of the crimes charged in this case. *See Trice v. Ward,* 196 F. 3d 1151, 1161 (10th Cir. 1999). Moreover, in light of the substantial evidence against petitioner in this case, it is doubtful that additional preparation time would have altered the outcome of petitioner's trial. *Id.* Petitioner's conclusory assertion that his counsel's appointment two months prior to trial left counsel with inadequate time to prepare a defense is therefore insufficient to demonstrate *per se* ineffective assistance of counsel. *See Jackson v. Carroll,* 161 Fed. Appx. 190, 193-94 (3rd Cir. 2005).

Petitioner next contends that trial counsel was ineffective for failing to call four of Ms. Jefferson's co-workers, who observed the perpetrator drop her off at her place of employment in Troy, Michigan. Petitioner claims that these four

8

individuals gave descriptions of the suspect that were inconsistent with his appearance or Jefferson's description of her assailant.

The only evidence that petitioner has provided in support of his claim is a narrative report made by the Troy Police Department, which mentions the name of the four co-workers and gives a description of the man who dropped Ms. Jefferson off at work. The report describes the suspect as a black male, 25-30 years, with a dark brown complexion, short hair with a bald spot, long-side burns to the chin. [1] The police report does not indicate, however, whether this description was made by all four co-workers or only some of the workers. The report does indicate that two of these witnesses, Todd Moore and Bruce Bibb, were actually driving behind the suspect's vehicle, so it is unclear if they witnessed the suspect solely from inside of their car.

Petitioner is unable to show that trial counsel's failure to interview and use the potential testimony of these four witnesses sufficiently prejudiced him, in light of the unshakable testimony of Tykeisha Jefferson, who positively identified petitioner as her assailant, as well as the likelihood that the prosecutor would have explained any identification discrepancies away on the ground that Jefferson had a better opportunity to observe and identify petitioner than the other witnesses had, due to her lengthy encounter with him. *See e.g. Hoots v. Allsbrook,* 785 F. 2d 1214, 1220-21 (4th Cir. 1986).

---

[1] *See* Petitioner's Exhibit G.

Moreover, there was additional evidence which linked petitioner to this crime. Petitioner used the same Ford Escort that he had stolen from his other victim, Tia Butler, who also positively identified petitioner, to perpetrate the sexual assault on Jefferson. There was evidence that petitioner gave the police a false name or alias at the time of his arrest, which was evidence of consciousness of guilt. *United States v. Clark*, 184 F. 3d 858, 869 (D.C. Cir. 1999). Finally, when petitioner observed the composite sketch of him made by the victims, he acknowledged to the police that it looked like him. Thus, petitioner was not prejudiced by counsel's failure to call Jefferson's co-workers to testify about their description of the person who dropped Ms. Jefferson off at work, in light of the additional evidence in this case. *See e.g. Black v. Goord,* 419 F. Supp. 2d 365, 380 (W.D.N.Y. 2006).

Petitioner finally claims that counsel was ineffective in variety of ways regarding the DNA evidence in this case.

Petitioner first argues that trial counsel was ineffective for failing to obtain an independent DNA expert, for failing to adequately challenge the prosecution's DNA expert, for failing to use a statistical analysis to challenge the DNA evidence, or for failing to challenge the procedures used in the DNA laboratory. In light of the fact that the DNA test results were inconclusive and did not inculpate petitioner, petitioner is unable to show that he was prejudiced by any alleged deficiencies in this regard. *See State v. Turner,* 252 Neb. 620, 635; 564

10

N.W. 2d 231 (Neb. 1997). [2]

Petitioner further claims that trial counsel was ineffective for failing to request DNA testing of the Ford Escort that was used in both sexual assaults, because such DNA tasting could have established that another suspect left the DNA in the car. The Michigan Court of Appeals rejected this claim, finding petitioner's theory to be highly speculative, particularly in light of the identification testimony against petitioner. *People v. Harris,* Slip. Op. at * 4.

To establish a reasonable probability that, but for counsel's unprofessional errors, the result of proceeding would have been different, a habeas petitioner must make more than merely speculative assertions. *See Bowen v. Foltz,* 763 F. 2d 191, 194 (6th Cir. 1985). Because petitioner's claim that counsel was ineffective for requesting a DNA test is conclusory and unsupported, he is not entitled to relief on this claim. *See Almon v. United States,* 302 F. Supp. 2d 575, 590-91 (D.S.C. 2004).

Petitioner is not entitled to habeas relief on his first and third claims.

**B. Claim # 2. The double jeopardy claims.**

Petitioner next claims that his double jeopardy rights were violated when he was convicted of six different counts of first-degree criminal sexual conduct on alternative theories. The Michigan Court of Appeals agreed with petitioner

---

[2] When there is paucity of federal law on a subject, state decisions interpreting the Federal Constitution, while not binding on federal court, are persuasive. *See Dell v. Straub*, 194 F. Supp. 2d 629, 649, n.2 (E.D. Mich. 2002).

that convicting petitioner under alternative theories for the same sexual penetration violated the Double Jeopardy Clause and ordered that three of petitioner's first-degree criminal sexual conduct convictions be vacated. *People v. Harris,* Slip. Op. at * 6-7.

Because the Michigan Court of Appeals corrected any constitutional infirmity in this case by vacating three of petitioner's first-degree criminal sexual conduct convictions, petitioner's Double Jeopardy claim is now moot. *See Nichols v. Moore,* 923 F. Supp. 420, 423-24 (W.D.N.Y. 1996).

### C. Claim # 4. The cumulative errors claim.

In his final claim, petitioner alleges that he was deprived of a fair trial because of cumulative error. The United States Supreme Court "has not held that distinct constitutional claims can be cumulated to grant habeas relief." *Lorraine v. Coyle,* 291 F.3d 416, 447 (6th Cir. 2002). Therefore, petitioner is not entitled to habeas relief on his cumulative errors claim. *Id.*

### IV. Conclusion

The Court will deny the petition for writ of habeas corpus. The Court will also deny a certificate of appealability to petitioner. In order to obtain a certificate of appealability, a prisoner must make a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2). To demonstrate this denial, the applicant is required to show that reasonable jurists could debate whether, or agree that, the petition should have been resolved in a different

manner, or that the issues presented were adequate to deserve encouragement to proceed further. *Slack v. McDaniel*, 529 U.S. 473, 483-84 (2000). When a district court rejects a habeas petitioner's constitutional claims on the merits, the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims to be debatable or wrong. *Id.* A federal district court may grant or deny a certificate of appealability when the court issues a ruling on the habeas petition. *Castro v. United States,* 310 F. 3d 900, 901 (6th Cir. 2002); *Dell v. Straub,* 194 F. Supp. 2d 629, 658 (E.D. Mich. 2002).

For the reasons stated in this opinion, the Court will deny petitioner a certificate of appealability because he has failed to make a substantial showing of the denial of a federal constitutional right. *Dell,* 194 F. Supp. 2d at 659. The Court will also deny petitioner leave to appeal *in forma pauperis*, because the appeal would be frivolous. *Id.*

## V. ORDER

Based upon the foregoing, IT IS ORDERED that the petition for a writ of habeas corpus is **DENIED WITH PREJUDICE.**

IT IS FURTHER ORDERED That a certificate of appealability is **DENIED.**

IT IS FURTHER ORDERED that Petitioner will be **DENIED** leave to appeal *in forma pauperis.*

                                                              s/Bernard A. Friedman
                                                   **HON. BERNARD A. FRIEDMAN**
                                                   CHIEF UNITED STATES DISTRICT JUDGE

DATED: May 12, 2006